UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 11-50073-JLV |
| | ) | |
| Plaintiff, | ) | ORDER REJECTING |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION |
| | ) | AND DISMISSING |
| FRANCISCO LOPEZ, a/k/a | ) | INDICTMENT |
| FRANCISCA LOPEZ, a/k/a | ) | |
| PONCHO LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

On July 6, 2011, defendant Francisco Lopez was indicted for failure to pay legal child support. (Docket 1). On February 27, 2012, defendant filed a motion to dismiss the indictment. (Docket 28). Mr. Lopez claims the prosecution is based on "an invalid state order that was premised on Tribal Court adoption proceedings which were illegally and improperly held as the Tribal Court . . . lacked any jurisdiction to enter an adoption order." Id. The government resists defendant's motion. (Docket 34) (sealed). Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred Mr. Lopez's motion to Magistrate Judge Veronica L. Duffy. On July 10, 2012, Magistrate Judge Duffy issued a report and recommendation. (Docket 48). The magistrate judge recommended denying defendant's motion. Id. Defendant timely filed objections to the report and recommendation. (Docket 51). The court

reviews *de novo* those portions of the report and recommendation which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). For the reasons stated below, the report and recommendation is rejected in whole.

## DISCUSSION

The court makes the following limited findings of fact drawn from the clearly undisputed submissions of the parties.

Francisco Lopez is a resident alien from Mexico. In December 1993, he was living with his girlfriend Francine Joyce Guevara, a/k/a Francine J. Bettelyoun, in Rapid City, South Dakota. Ms. Guevara is an American Indian and an enrolled member of the Oglala Sioux Tribe ("OST"). Ms. Guevara and Mr. Lopez never married and have no children together.

On December 23, 1993, Ms. Guevara's sister, Carla T. Kocer, gave birth to a baby boy, J.R.B. Because of a change in the child's last name in the adoption proceedings, the child will be referred to as "J.R.L." (Docket 29-4). Other children of Ms. Kocer had been removed from her care by the Department of Social Services. She asked her sister Francine to adopt J.R.L. immediately to avoid having him taken into state custody. Ms. Guevara agreed and asked Mr. Lopez to sign an adoption petition in OST

Tribal Court to help her keep the baby from being taken by state authorities. Mr. Lopez could not read English and relied on what Ms. Guevara explained to him about the adoption process.

On December 29, 1993, Ms. Guevara and Mr. Lopez traveled to Pine Ridge, South Dakota, to appear in OST Tribal Court for an adoption hearing. On that day Mr. Lopez signed a petition for adoption in the Tribal Court before a tribal court judge. (Docket 29-3). The petition for adoption makes no mention of the biological father's name or whether the biological father was unknown. Id.

Section 53 of Chapter 3, Domestic Relations, of the OST Law and Order Code controls the adoption of an Indian child in OST Tribal Court. "The Oglala Sioux Tribal Court is vested with jurisdiction to hear, try and determine all matters arising under the provisions of this Chapter [relating to the adoption of a minor]." Oglala Sioux Tribe: Law and Order Code, Chapter 3, Section 53.5 (hereinafter the "Law and Order Code, Chapter ____, Section ____"). The Juvenile Code section of the Law and Order Code also addresses the OST Tribal Court's authority over the adoption of Native American children.

> The Oglala Sioux Tribal Court shall have jurisdiction in any adoption proceeding involving an Indian child or adoptive Indian parent . . . who is a member of the Oglala Sioux Tribe and maintains sufficient contracts therewith . . . .

3

Id. at Chapter 5, Juvenile Code, Subchapter VIII, Adoption, Section 8.01.

The Juvenile Code also mandates that "[t]here shall be no adoption of Oglala Sioux Indian children by non-Indians." Id. at Section 8.04.

Chapter 3, Section 53.3, directs when the consent of parents is necessary for an adoption:

> A legitimate child cannot be adopted without the consent of the parents if living, nor an illegitimate child without the consent of its mother, if living, provided that in the following cases, consent shall not be necessary:
>
> (1) From a parent who has been adjudged guilty of adultery or who has been convicted of any other [offense] punishable by imprisonment in the penitentiary for a period not less than one (1) year, or for an offense involving moral turpitude.
>
> (2) From any parent who has abandoned his or her child for the period of one (1) year.
>
> (3) From any parent who has been adjudged by a Court o[f] competent jurisdiction to be a habitual drunkard.
>
> (4) From any parent who has been judicially deprived of the custody of the child, provided any such adjudication shall be final on appeal to the Court of last record or the time for such appeal shall have expired.

Id. at Chapter 3, Domestic Relations, Section 53.3. Chapter 5, Section 8.07, of the Adoption subchapter of the Juvenile Code also addresses parental consent:

> A child cannot be adopted without the consent of the parents, if living, provided that in the following cases consent shall not be necessary:
>
>> (a) From any parent, who has been judicially deprived of the custody of the child, provided any such adjudication shall be final on appeal or the time for such appeal shall have expired; or
>>
>> (b) From any parent who has been adjudged by the Court to be mentally incompetent; or
>>
>> (c) From any parent who has abandoned his or her child for a period of one (1) year.

Id. at Chapter 5, Subchapter VIII, Section 8.07. That subchapter also addresses paternity issues in adoption:

> The father of a child born to a woman who is not married shall have no rights to service of process of adoption . . . or termination of parental rights proceedings unless he is known and identified by the mother or unless he, prior to the entry of a final order in any of the proceedings, shall have acknowledged the child as his own by affirmatively asserting paternity:
>
>> (a) By publicly acknowledging it as his own, receiving it into his family; and treating it as his own child.
>>
>> (b) By causing his name to be affixed to the birth certificate.
>>
>> (c) By commencing a judicial proceeding claiming parental rights.

Id. at Section 8.09.

Although the parties have not produced a consent to the termination of parental rights for Ms. Kocer, the order declaring child adopted (the "order of adoption") declares her parental rights were terminated on

5

December 29, 1993. (Docket 29-4). J.R.L.'s biological father's parental rights were not terminated by the adoption order.[1] Id. None of the exceptions to parental consent found in Chapter 3, Section 53.3, and Chapter 5, Subchapter VIII, Section 8.07 & 8.09 were alleged in the petition for adoption or found applicable by the order of adoption. See Dockets 29-3 & 29-4. Most of those exceptions to parental consent would not be applicable to this particular adoption proceeding as J.R.L. was only six days old at the time the petition for adoption was filed, heard and granted. Id.

The OST Law and Order Code specifically requires notice of an adoption be given to the biological parents of a child proposed for adoption.

> A copy of the petition for adoption and order for hearing shall be personally served upon the legal/or natural mother and father of the child to be adopted; provided, however, that service may not be required or otherwise excused under this Chapter. The petition and order shall be accompanied by a notice that adoption of their child is requested, that if granted their parental rights in said child will be terminated, the time, date and place of hearing, and that they may attend the hearing and show cause why the

---

[1] In its initial brief, the government states "J.R.L. was born . . . to his biological parents, Carla T. Kocer and David Martin." (Docket 36 at p. 1). In its supplemental response, the government changed positions, asserting:

> The paternity of David Martin was not confirmed. According to Francine . . . David Martin is not the biological father of J.R.L . . . . Apparently . . . [Ms. Kocer] was in several relationships at the time J.R.L. was conceived, and is unsure of the father of J.R.L. Martin was one man Kocer was involved with but . . . his paternity was not proven, nor was any paternity proven. This is the reason the tribe only terminated Kocer's parental rights without doing a termination of the father's rights as the father was unknown at the time.

(Docket 47 at p. 1).

adoption should not be granted if said cause exists. Proof of service required under this section shall be made to appear by affidavit or oral testimony.

Law and Order Code, Chapter 5, Juvenile Code, Adoption, Section 8.15.

Service by publication is also permitted.

> In the event personal service as required under this Chapter is not possible, facts and circumstances resulting in the impossibility shall be set forth in an affidavit. The affidavit and a request for service by posting shall be presented to the Oglala Sioux Tribal Court. If the Court is of the opinion that good cause exists for service by posting, it shall enter an order to that effect.

Id. at Section 8.16. Publication by posting is directed by Section 8.17:

> Notice by posting shall be done, in a public place of the Community of the adoptive parents' residence. It shall take the form of the notice required to be personally served. The notice shall be posted five (5) days. Such posting shall take place in the same manner in the same place or places as required for posting under the Juvenile Section of this Code.[2] Id.

---

[2] "Whenever it shall appear . . . that any person . . . to whom notice should be given resides or has gone off of the Reservation, or on due inquiry cannot be found, . . . or that their place of residence is unknown, so that the summons or citation cannot be served upon him, or whenever any person is affected by the designation 'All Whom it May Concern', the Judge or Clerk shall cause the summons or citation to be posted once in the post office, community store, law enforcement office, or other commonly used public place in the community, or community where the person or persons to whom notice is required to be given resides or is last known to have resided, or in any other place ordered by the Court where such posting is likely to give notice to the person . . . to whom notice is required to be given; such posting shall be posted for not less than five (5) days prior to the day of hearing on the petition. Such Judge or Clerk shall also within one (1) day after the posting of such summons or citation, send a copy thereof by mail, addressed to each person to whom notice should be given whose place of residence is stated in the petition and who shall not have been served personally with the summons or citation. Notice given by posting as required by this Chapter shall be the only posting notice required either in the case of residents, nonresidents, or otherwise. The certificate of the Clerk or

Neither prior to nor at the adoption hearing did a representative of the South Dakota Department of Social Services or any tribal agency investigator meet with Ms. Guevara or Mr. Lopez or file a report with the tribal court regarding the petitioners' status or the details of J.R.L.'s family situation. The Law and Order Code requires such an investigation and report:

> Whenever a person petitions the Oglala Sioux Tribal Court for an order adopting a minor child, the Judge of the Tribal Court shall fix a time for hearing and shall request a Bureau of Indian Affairs or Oglala Sioux Tribal Social Services Department, or an officer of the South Dakota Department of Social Services, or some other competent agency person appointed by the Court, to make a careful and thorough investigation of the matter and report his findings, including a recommendation as to whether or not the adoption should or should not be granted, in writing, to the Court.

Law and Order Code, Chapter 5, Juvenile Code, Subchapter VIII, Adoption, Section 8.13. On the order of adoption this requirement of the Law and Order Code was left blank. (Docket 29-4 at p. 1).

The court need not make a specific finding as to J.R.L.'s biological father. What is relevant to the analysis is that the OST Tribal Court made no finding with respect to J.R.L's biological father and took no action to terminate the biological father's parental rights. The government argues

---

Judge that he has sent such notice in pursuance of this Chapter shall be evidence thereof." Law and Order Code, Chapter 5, Juvenile Code, Subchapter V, Juvenile Offenders, Section 5.03.

"[t]he lack of legal documents proving Martin is J.R.L.'s father, in conjunction with the explanation given by [Ms. Guevara], makes it appear that because paternity was never proven, no termination of rights for J.R.L.'s father was necessary for the adoption." (Docket 47 at p. 2). Such an argument defies logic and general due process principles. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it. If the State prevails, it will have worked a unique kind of deprivation. . . . A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." Santosky v. Kramer, 455 U.S. 745, 759 (1982) (internal quotation marks and citation omitted). "The procedural due process requirements for parental rights termination hearings were announced in Alsager v. District Court of Polk County, 406 F. Supp. 10, 24-25 (S.D. Iowa 1975), Aff'd, 545 F.2d 1137 (8th Cir. 1976). . . . This court approved of the district court's holding that: 'notice should include the date, time and place of the hearing; a clear statement of the purpose of the proceedings and the possible consequences to the subject thereof . . . .'" Syrovatka v. Erlich, 608 F.2d 307, 310 (8th Cir. 1979) (citing Alsager, 406 F. Supp. at 25 (internal quotation omitted).

     Finally, the Law and Order Code required a period of introduction of the child into the adoptive parents' home and confirmation the adoption is

9

in the child's best interests before an adoption could be final. "No petition for adoption shall be granted until the child shall have lived within the proposed adoptive home for a period of at least six (6) months before or after the filing of the petition." Law and Order Code, Chapter 5, Juvenile Code, Subchapter VIII, Adoptions, Section 8.11. The code provides no exception to this mandatory requirement and the order of adoption simply declared "the child has lived within the home of the Petitioners since birth . . . ." (Docket 29-4 at p. 1). The order of adoption was entered only six days after J.R.L.'s birth and the government presented no evidence of any final adoption order after the six-month time period.

Whether the OST Tribal Court had adjudicative power over a non-tribal member, such as Mr. Lopez, is a federal question. Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 324 (2008) (citing Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 15 (1987); and National Farmers Union Insurance Co. v. Crow Tribe, 471 U.S. 845, 852-53 (1985)). If the OST Tribal Court lacked personal jurisdiction over Mr. Lopez, a non-member, the order of adoption is "necessarily null and void." Plains Commerce Bank, 554 U.S. at 324.

Ordinarily, questions of personal jurisdiction over non-Indians, such as Mr. Lopez, "are issues relating to the Tribal Court's jurisdiction which should be dealt with first by the Tribal Court itself." Bruce H. Lien Co. v.

10

Three Affiliated Tribes, 93 F.3d 1412, 1420-21 (8th Cir. 1996). "Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.' " Iowa Mutual Insurance Co., 480 U.S. at 16 (citing National Farmers Union Ins. Companies, 471 U.S. at 857). "[C]onsiderations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court." Id. at 15 (citing National Farmers Union Ins., 471 U.S. at 857).

Under normal circumstances the court would "stay its hand" and allow the OST Tribal Court to resolve the personal jurisdiction issue. However, this case presents a unique legal question and highly unusual circumstances. Mr. Lopez is a defendant in a federal criminal case with major potential ramifications to his liberty interest if convicted.[3] There is a strong likelihood the OST Tribal Court would have little interest, if any, in a procedural issue nineteen years after the fact. J.R.L. has reached the age of majority and there is no current child support obligation due from a parent. Additionally, the court's decision only is intended to address Mr. Lopez's participation in J.R.L.'s adoption proceedings and not the adoption of J.R.L.

---

[3] Failure to pay legal child support, as a felony, carries a maximum term of imprisonment of 2 years, a fine of $250,000 or both such fine and imprisonment, a period of supervised release of up to one year, and a $100 assessment. 18 U.S.C. § 228(a)(3).

11

by Ms. Guevara.  Under these limited and special circumstances, the court will determine whether the OST Tribal Court had personal jurisdiction over Mr. Lopez.

As a foreign national and a non-English speaker, Mr. Lopez would have no way of comprehending the OST Law and Order Code or the requirements for completion of an adoption in the OST Tribal Court.  As a non-Indian, Mr. Lopez is prohibited from adopting J.R.L.  Law and Order Code, Chapter 5, Juvenile Code, Subchapter VIII, Adoptions, Section 8.11.

Notwithstanding this clear jurisdictional defect, the tribal judge granted the adoption without consideration of or complying with the mandatory provisions governing tribal court adoptions of Native American children.  Mr. Lopez's signature on the petition for adoption could not overcome the adoption prohibition of Section 8.11.  The petition was defective on its face.  The OST Tribal Court did not have personal jurisdiction over Mr. Lopez.

Mr. Lopez satisfied his burden of showing, for purposes of this criminal prosecution only, the underlying OST Tribal Court adoption order was void for lack of personal jurisdiction.  United States v. Bigford, 365 F.3d 859, 872 (10th Cir. 2004) ("it is appropriate to shift the burden to the defendant to prove a claim that personal jurisdiction was lacking [in a child support enforcement prosecution]."); United States v. Kramer, 225 F.3d 847,

858 (7th Cir. 2000) ("the maintenance of a meritorious jurisdictional defense would negate the element of willfulness [in a child support enforcement prosecution]."). For purposes of this criminal prosecution only, the court finds as a matter of law the adoption proceedings as they relate to Mr. Lopez are null and void and do not constitute a basis for prosecution under 18 U.S.C. § 228(a)(3).

The basis for the child support order in the Seventh Judicial Circuit Court for the State of South Dakota is the OST Tribal Court order of adoption which allegedly created a legal relationship between Mr. Lopez and J.R.L. (Docket 34-2 at p. 1). The government contends the state court order was premised on "a stipulation acknowledging [Mr.Lopez's] child support obligation for J.R.L." (Docket 34 at p. 1). In support of that assertion, the government submitted Exhibit A. <u>Id.</u>; <u>see also</u> Docket 34-1. On its face, Exhibit A does not relate to J.R.L. nor does it acknowledge Mr. Lopez's obligation to pay child support for J.R.L. The stipulation states the support due is "for the period covering 04/16/91 to 07/22/94." (Docket 34-1 at p. 1). This child support obligation would have begun 982 days <u>before</u> J.R.L. was born. The state court judgment for support debt and order amending child support obligation (Docket 34-2), being premised

upon the underlying tribal court order of adoption, for purposes of this criminal prosecution only, do not constitute a basis for prosecution.[4]

## ORDER

Based upon the above analysis and the unique factual background and legal issues in this case, the court grants Mr. Lopez's motion to dismiss. Accordingly, it is hereby

ORDERED that the report and recommendation (Docket 48) is rejected in whole.

IT IS FURTHER ORDERED that the defendant's objections (Docket 51) are denied as moot.

IT IS FURTHER ORDERED that defendant's motion to dismiss (Docket 28) is granted.

IT IS FURTHER ORDERED that the indictment (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that the defendant is exonerated from the provisions of the order setting conditions of release. (Docket 19).

Dated December 19, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

---

[4]While addressing the subject of the state court support order, the court observes the judgment entered by Circuit Judge Fitzgerald on February 11, 1998, was not served on a member of Mr. Lopez's family until June 6, 2010, over twelve years later. (Docket 34-3). The government offers no proof of service between 1998 to 2010. Enforcement of a state child support order requires "willful disobedience." Kramer, 225 F.3d at 857; see also 18 U.S.C. §§ 228(1) & (3).